Broach. Good morning, Your Honors. Brody White on behalf of Deutsche Bank. All right. And Your Honors, this case is, I like to refer it as Perla on a plate. And when I say that, I mean that this case has facts nearly identical to the case Perla del Mar that we reference continually in our reply brief that wasn't issued at the time we filed our opening brief. In Perla del Mar, it dealt, same with this case, an HOA foreclosure cell and the question of whether that HOA foreclosure extinguished the bank's deed of trust. In Perla del Mar, Miles Bauer, the law firm, represented Bank of America. And in March of 2012, they sent out a letter asking for the payoff of the super priority portion of the HOA lien. They did not receive a response and did not send a check for that super priority amount. Nevertheless, after the foreclosure cell in January 2013, the Nevada Supreme Court found that because the HOA foreclosure trustee, NAS, had a policy of rejecting valid tenders, and because Miles Bauer knew about that policy, that tender of the super priority amount was excused. The cell was void as to that super priority amount and the deed of trust survived foreclosure. This case had exactly similar circumstances. Miles Bauer represented Bank of America in this case. Miles Bauer, in June 2012, just a few months after Miles Bauer sent the letter in Perla, we sent a letter. Miles Bauer sent the same letter, a very similar letter, asking for the payoff. There was no response. Miles Bauer never sent a check in. Then in January 2013, the same month as the foreclosure cell in Perla, the HOA trustee, NAS, who is the same HOA trustee, foreclosed on the property. These are the exact same circumstances. Counsel, is it your view that we should not only reverse but render or remand? We believe that you should reverse and that on both counts, that you should reverse the Sadaquoi Bank and grant summary judgment in favor of Deutsche Bank. But as we stated in our brief, we would also like if your honors feel any withholding. If you don't believe that we presented enough evidence to establish futility, we believe that it should be remanded at least so the district court consider Perla Del Mar for the first time because the district court did not have the opportunity to consider Perla Del Mar when this case was before the district court. And as the Ninth Circuit has done previously, especially in the case Quartet, they have remanded it so that the district court could consider Perla Del Mar on the first basis. But we believe that's unnecessary here because we believe the record clearly establishes that had a policy of rejecting tender and that Bank of America through Miles Bauer knew of that policy. And to really understand what is required to show that policy, we look not only to Perla but to Nevada Supreme Court precedent thereafter, especially the case we refer to as Wachovia. That's U.S. Bank as trustee to Wachovia Bank versus SFR Investments. And although this is an unpublished case, it is directly on point, deals with the same parties, Miles Bauer and NAS. And the Supreme Court goes into detail of what's required to show a policy of excused tender known to Bank of America. And the first poll, which is important, that in order to determine whether NAS had a policy, they did not need to depose or have trial testimony in that specific case. But they could use trial testimony and depositions from other cases to establish a policy of rejecting tender. And the Supreme Court said that's okay, specifically because doing otherwise would, quote, force NAS to be deposed and perhaps provide trial testimony in every Chapter 116 case. And that nothing NAS did or said in hundreds of other cases with nearly identical facts would matter. And then the Nevada Supreme Court went into detail of exactly what sort of evidence is necessary to show that NAS has a known policy of rejecting tenders. And they said, quote, there's an arbitration brief that NAS joined, not that it the response attempt to make a super priority tender as a scheme and stated that NAS did not believe the super priority component of an HOA's lien came into existence until after the first deed of trust was foreclosed. That arbitration brief, the Nevada Supreme Court held, was sufficient not only to show that they had a policy of rejecting tenders, NAS, but that Miles Bauer knew of that policy. Now, turning to the record in this case, although Perler was not issued, I believe my counsel prior to me knew exactly what was going to happen and provided an excerpt record that shows that NAS had a policy of rejecting tender and Miles Bauer knew about it. Specifically, I would turn to excerpts of record, page 507, which is the most important in this case, in that Chris Juergensen of NAS testified first that NAS had a policy of that the super priority of lien didn't only include nine months of assessments, but also included collection costs and other fees, which is incorrect under the Diamond Spur case. The super priority amount only includes nine months assessments. Mr. Juergensen on that same testified that NAS had hundreds and hundreds of cases with Bank of America where, and they became well aware of NAS's false policy that the super priority amount included more than nine months of assessments. And then he crucially testified that in 2012, specifically in September 2012, which is directly on point for this case, it's directly halfway in between when Miles Bauer first sent out the letter and NAS foreclosed. Counsel, just to clarify, is it your position then that maintenance and nuisance abatement is not included in the super priority? No, we believe that maintenance and nuisance abatement are included, but not collection fees or costs. And we were not dealing with the maintenance and nuisance abatement fees here because it was established that there were none. We're talking specifically about collection costs and fees, which is what Mr. Juergensen testified of. And those are not included. And Mr. Juergensen most importantly testified that they had not accepted numerous checks from Miles Bauer because they did not include those collection costs and fees, which again, under Diamond Spur were not rejecting tenders, but that they had hundreds and hundreds of cases with Bank of America, and by 2012 had rejected numerous checks. That establishes not only that NAS had a policy of rejecting tender, but it also establishes Bank of America knew about that policy. A second piece of evidence, which we cited to in our reply brief, is the Stonefield case where Bank of America, BAC Home Loans, which is a subdivision of the Bank of America, brought a case against numerous HOA trustees, including NAS in 2010. So prior to the foreclosure sale in this case, and established there that NAS had been rejecting tenders. And this court in Java Sparrow case has already accepted that as proof not only that NAS had a policy of rejecting tender, but that Bank of America knew that policy. And the court can take that on judicial notice. And finally, I would submit that there are over 100 cases where courts in Nevada and federal courts have either established that NAS had a policy of rejecting tenders, or have established that NAS rejected a specific tender, including cases before Judge Rawlinson, where in the Keyshack case, where it was established that NAS rejected a tender payment in January 2nd, 2013, which was only a few days before the foreclosure sale in this case. In fact, up next is a case where NAS rejected a tender from Miles Bauer in September 2010. I dare say that there may be no fact that's been more established by numerous cases in Nevada than the fact that NAS had a policy of rejecting tenders, and that NAS had rejected at least 88 tenders on record. And I know that the facts of a case cannot be used on summary judgment in a typical basis. But here, it's so overwhelming, the fact that NAS had a policy of rejecting tender. And it's so overwhelming that it corroborates the testimony of Mr. Jorgensen, that he had hundreds and hundreds of cases with Bank of America, and had rejected tenders in those cases prior to the time in this case. I believe it establishes conclusively that there was a policy known to NAS of rejecting tenders. All right, counsel, you've exceeded your time. We will give you one minute for rebuttal. Okay. Thank you, Your Honor. Good morning. If it please the court, Michael Bone for respondent. For appellees, pardon me. The court should uphold the order granted, granting summary judgment in this case for the following reasons. The court made its decision on summary judgment. The only evidence before the court regarding any attempt, well, the only evidence before the court regarding the policy of rejecting tender on behalf of NAS came from depositions taken, not in this case, but in other cases. So, counsel, if we agree that those depositions were properly considered, do you lose? I would not necessarily. Okay, tell me why. Okay. You wouldn't lose if we- First of all, under Rule 801, it's a statement made outside this case, not under oath. Right, but if we say that the court properly considered those depositions, tell me why you would not lose? Well, the letter in issue here was September of 2012. Chris Juergen's deposition, which by the way, his deposition testimony was eight pages. It was taken in a case where there was no opposing counsel. It was just a conversation between Mr. Juergensen, the attorney for the bank, and the court reporter. So, there's no one there to cross-examine Mr. Juergensen. So, it's improper for that reason and should be considered hearsay, not considered. But Mr. Juergensen did testify that he didn't even go to work for NAS until 2013. So, he's incompetent to testify as to what their policies and procedures were a year before he even started work there. In regards to the testimony of Susan Moses, which was also submitted from a deposition from a prior case, she answered, I don't know, to a lot of questions. And there was no basis upon her. You can't, there's nothing in her testimony where the court could find that the NAS did have a policy of rejecting payments. So, my question was, I understand that you challenged those depositions. But if we disagree with you and say that the court properly considered those depositions, then wouldn't that be sufficient evidence to support the grant of summary judgment? Again, no. Because the letter in question in this case was September of 2012. And Mr. Juergensen didn't go to work for NAS for a year afterward. So, Mr. Juergensen cannot testify what NAS did in September of 2012 when this letter came in. So, Patrick, what do you do about Perla? How do you distinguish Perla? I was trial counsel on Perla. I'm very familiar with Perla. Okay. The trial and Chris Juergensen there was on the stand. And he did testify that they did after a while, they did after a while start rejecting the tenders, but they were insufficient. Now, I can tell you just a couple of months ago, right in this very courtroom, we had a very similar case with rejected tender. And take two steps backward. I'm sure you're very in Clark County. Nobody knew what was going on in 2012 as far as the HOA rules and the foreclosure was until September 18th, 2013, when the Nevada Supreme Court came out with the SFR decision that they finally decided, yes, a foreclosure of an HOA lien, the super priority portion will wipe out the bank's trustee. So, nobody really knew what was going on then. After SFR, there were Shadowwood and Shadow Canyon about the grounds needed to set aside a foreclosure set. Cases came up about what constituted the super priority lien, what constituted a proper tender, and then the Fannie Mae issues. So, these many cases, I handled a number of them for a lot of these. But in September of 2012, when this is going on, nobody knew what was going on. Because the case law was in such flux, why wouldn't it be prudent for us to remand this case to the district court to consider the effect of PERLA? Again, the court did have Jessup, the Thomas Jessup case. But it didn't have PERLA. Correct. Well, and the Thomas Jessup case was overruled later on, and PERLA came out shortly thereafter. I can tell you, well, my point I was trying to get to was there were a number of cases where the banks were just too busy to send out the check to be rejected. Because the Diamond Spur case says, hey, if you send the check, even if it's rejected, that's enough to satisfy the super priority. After PERLA Del Mar came out, then the bank went back to all the defendants, went back to say, well, we didn't send any checks because we knew back then they'd be rejected, which is, I would respect the Smithday trial will show that that's not correct. I had a trial right here in June in front of Judge Bulwer, this very courtroom. And Rock Young, who's the gentleman who sent out a lot of the letters, he testified, I can tell you, I represent to the court that they didn't start getting, if they did not get a ledger from the HOA, they would not send a check. And they didn't start getting ledgers from the HOAs until sometime in 2013. And so they did not send out any checks until the year 2013. And then I follow up and said, so if you didn't send out checks without ledgers and didn't get ledgers until 2013, you didn't send out any checks in 2012, correct? He answered yes. And then I said, so if you didn't send any checks in 2012, there's nothing to be rejected. And so you would not know of any known policy of rejection. He said, yes. So if you want to remand it, I would suggest respectfully, there are no grounds to remand it. But if you do, that's what the testimony is going to be from Rock Young, that there were no checks went out in 2012. So they could not know of any known policy. Getting back to this particular case, again, I would respectfully submit that the judge did it. I know court can only grant summary judgment based upon admissible evidence. These deposition testimony in another case is hearsay, which is not admissible. And there's no exception for that. And so because of that, they did not prove their case. And they shouldn't be given a second bite at the apple. The purpose of summary judgment helped clear the court of the precise issue that was before the court. Either we apply that law or we remand it to the district court to apply it. Because intervening law is in play if it comes before the appeal is finalized. So either we would have to apply PERLA or the district court would have to apply it. Do you from this case? Well, we would have to decide that. If you say that we have to decide the case, then we'd have to look at whatever the evidence is before the district court and decide whether or not summary judgment was appropriate for either part. So we would be doing that in the first instance if we didn't remand it for the court to apply PERLA. Because PERLA is obviously pertinent authority for this case. Understood. But you would be giving them a second chance to put on the case that they should have put on at the time of summary judgment. Should they have put it on or did PERLA change the landscape? They put on the deposition testimony of Susan Moses and Chris Juergens and other litigation. They didn't take their deposition in this case. They could have, but they didn't. And they relied upon hearsay testimony in another case, which is not admissible for the summary judgment. So they should not be rewarded for their failure to do discovery properly and present their case properly before the district court and summary judgment. So counsel, you have not briefed PERLA to this court, correct? In this case? I do believe PERLA was mentioned. Well, I think your briefs were today. This is the first time this panel has ever heard them, correct? Wouldn't it make sense to send this back to the district court to give you a chance to fully make all these arguments and brief them properly? Going back to what I, they could not be given a second chance when on the case. But don't you want a first chance? Don't you want a first chance to brief PERLA? Not necessarily. No, we already won. So I guess we'll see. My point is they put forth the same issues because the same issues are up there in Jessup about known policy rejecting tender. Now, the Jessup case was later reversed by subsequent opinion, but they knew about it. They attempted to put that issue on with hearsay testimony from other cases. I have five seconds left. They should not be permitted to come back and retry their case that they should have tried in the first place when summary judgment was listed. Thank you. We understand your argument. Thank you, counsel. Rebuttal, one minute. Your Honor, the polling council said that we, this case should not be remanded because we had a chance to argue based on Jessup. But Jessup was specifically overturned because it did not comply with the standard of review set forth in PERLA Del Mar. Before PERLA Del Mar, there was no case in Nevada that stated that the standard of review was to see whether there was a policy known to the bank of rejecting tender. None of that was available to us before PERLA. When we briefed the summary judgment and then our opening brief in this case, it was based on Jessup. And the Nevada Supreme Court specifically said that Jessup was incorrect and overturned it. We believe that we at least need to, as Judge Owen said, have a chance to brief this based on controlling law in PERLA Del Mar. What's your response to opposing counsel's objections to the knowledge of the deposition of the deponents? And he also said this was hearsay and should not have been admissible. What's your response? I'm glad you asked, Your Honor. First, it is well known in the Ninth Circuit that deposition testimony from other courts may be included as evidence in summary judgment because it can be presented in the future in a form that's admissible in court. This court takes what is called a pragmatic approach, as it states in Inree Sunset Bay Associates, a pragmatic approach, and it allows any evidence at least as reliable as an affidavit to be admissible in summary judgment. And then in the Kurnow case, this court has said such evidence includes any testimony given under oath. Because those depositions were provided under oath, they're admissible on summary judgment standard. If this case were to go to trial, we would have to present those witnesses. But as it stands, those depositions are admissible to the same quality as an affidavit would be. And so then any challenge regarding the level of knowledge would just go to the weight of the deposition testimony. Is that your position? It would go to the weight of the deposition testimony. Mr. Juergensen testified in that deposition that he was a 30B6 witness for NAS and that he had knowledge of NAS's policies and he had knowledge of what occurred prior. Again, Mr. Juergensen's testimony was sufficient to establish that NAS had a policy of rejecting tender in Perla del Mar. If his testimony was admissible for that in Perla del Mar, it surely was admissible in this case because we are dealing with the exact same time periods, namely a foreclosure that occurred in January of 2013 as in both cases. All right, counsel. Thank you to both counsel for your helpful arguments in this case. The case just argued is submitted for decision by the court.
judges: RAWLINSON, OWENS, Fitzwater